FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 13, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID R. PRIEST,<br><br>    Plaintiff,<br><br>v.<br><br>D HOLBROOK, Superintendent; JACKSON, Custody Program Supervisor; A. ALVARADO-JACKSON, Custody Unit Supervisor; DAVID BREWER, Unit Sgt; DUNCAN, Correction Officer #7388W; DOE, Correction Officer #7423,<br><br>    Defendants. | NO: 2:17-CV-133-RMP<br><br>ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Amended Motion for Summary Judgment, ECF No. 61. The Court has considered the record, the relevant case law, and is fully informed.

## BACKGROUND

Plaintiff David Priest was incarcerated at the Washington State Penitentiary in Walla Walla, Washington, when the events giving rise to his claims occurred.

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 1

*See* ECF No. 15 at 6. All of Mr. Priest's claims involve the alleged theft or destruction of twenty eagle feathers belonging to him, after prison staff transferred him from his single-person cell to segregation on August 9, 2015. *See id*. Mr. Priest is a member of the Coleville Tribe and practices the Seven Drums religion. ECF No. 67-1 at 14. Mr. Priest explains that eagle feathers play a critical role in Seven Drums ceremonies, such as naming ceremonies, and describes eagle feathers as sacred religious items. *Id*. at 21. Mr. Priest's sacred eagle feathers were sitting on his bed when he was taken from his single-person cell and transferred to segregation. *See id*. at 74. He never saw his eagle feathers again. *Id*.

It is uncontested that Mr. Priest was absent when his eagle feathers were taken. *Id*. at 34. Additionally, neither party has presented evidence from an eyewitness, or any other direct evidence demonstrating who took the feathers. Thus, evidence regarding custody staff's access to Mr. Priest's property during Mr. Priest's absence is central to this case.

Custody staff, including correction officers ("COs"), generally work in three, eight-hour shifts. ECF No. 56 at 2. Custody staff assigned to the first shift work from 10:00 p.m. to 6:00 a.m.; second-shift staff works from 6:00 a.m. to 2:00 p.m.; and third-shift staff works from 2:00 p.m. to 10:00 p.m. *Id*. On August 9,

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 2

2015, Lieutenant David Brewer[1] was working the third shift, from 2:00 p.m. to 10:00 p.m. *Id*. at 3. When Lieutenant Brewer worked the third shift in Mr. Priest's former unit, he generally supervised six or seven COs. *Id*. at 2.

According to Lieutenant Brewer, Mr. Priest began acting strangely in the mid-afternoon, and he appeared to be "under the influence of some type of substance." *Id*. at 3. Lieutenant Brewer recalls COs Steven Medlock and Derek Henderson escorting Mr. Priest from his cell to a holding cell, where Mr. Priest was ordered to submit to a urinalysis ("UA"). *Id*. Mr. Priest did not provide a sample. *Id*. Because Mr. Priest did not provide a UA, a facility nurse examined him, and she concluded that he may have been under the influence of a substance. *Id*. Mr. Priest denies that he was under the influence of any substance at that time. ECF No. 67-1 at 78. Lieutenant Brewer states that Mr. Priest was found guilty of an infraction for refusing a UA and was taken into segregation. ECF No. 72-1 at 2. This occurred during Lieutenant Brewer's shift, the third shift.

When an inmate is taken into segregation, a CO (or multiple COs) working in the inmate's unit pack up the property into boxes and then take the property to the unit property room to be inventoried. *See* ECF No. 67-1 at 32–35. The COs who pack up an inmate's property when the inmate is transferred are not

---

[1] At the time of the acts giving rise to Mr. Priest's claims, Lieutenant Brewer was Sergeant Brewer. ECF No. 56 at 1–2.

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 3

necessarily the COs who inventory that property. In fact, Lieutenant Brewer explains in his declaration that it is standard procedure "for COs on the first shift to inventory property packed out by COs on the third shift because first shift COs usually ha[ve] more time to do this task." ECF No. 56 at 4. The COs who inventoried Mr. Priest's belongings were Defendants Doe (Jose Berreras-Miranda)[2] and William Duncan. ECF Nos. 57 at 2 and 71 at 2. Defendants Doe and Duncan claim that Mr. Priest's property had been packed out of Mr. Priest's cell by third-shift COs on August 9, 2020, and that they inventoried the property the following day, while working the first shift. *Id*. Defendants Doe and Duncan assert that there were no eagle feathers in Mr. Priest's property, that they did not see Mr. Priest's eagle feathers, and that they did not enter Mr. Priest's cell to remove property on August 9 or 10, 2015. *Id*.

Mr. Priest filed a grievance in response to his missing eagle feathers. ECF No. 72-1. He explained:

---

[2] When questioned about Defendant Doe during his deposition, Mr. Priest explained that he sued John Doe because he was unable to read one of the signatures on the property inventory form missing his eagle feathers. ECF No. 67-1 at 41. Although two COs had signed the inventory form, he could only identify one of them from their signatures. *See id*. The officer with the previously unidentifiable signature has since been identified as Jose Barreras-Miranda. *Id*.

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 4

> On Aug. 9th 2015 Sgt Brewer of G Unit West complex had me put in IMU for not being able to provide ua–I had 20 eagle feathers i had just received from chaplain–these feathers were spread out on my bed in GW206 (singleman cell) whoever packed my property/ cell did something w/my eagle feathers. I just received a kite back from chaplain Alden saying he never received any feathers. I had 2 boxes 1 for hobby supplies 1 for sacred items the feathers should have been placed in the sacred box. (they were not)

*Id*. at 2. In response to the grievance, Unit Manager A. Alvarado-Jackson reported that no eagle feathers had been logged as inventory. *Id*. She also mentioned that COs Duncan and Barreras-Miranda inventoried Mr. Priest's property and did not document any eagle feathers. *Id*.

On September 20, 2017, while still incarcerated, Mr. Priest filed his First Amended Complaint against Defendants Superintendent Holbrook, Custody Program Supervisor Jackson, Custody Unit Supervisor Alvarado-Jackson, Lieutenant Brewer (formerly Sergeant Brewer), CO Duncan, and CO Doe. Mr. Priest has since been released from prison. ECF 67-1 at 11.

Mr. Priest claims that Defendants have violated the First Amendment, the Fourteenth Amendment Due Process Clause and Equal Protection Clause, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Religious Freedom Restoration Act ("RFRA"). ECF No. 15 at 6. Mr. Priest also asserts an Eighth Amendment claim in his First Amended Complaint's Statement of Facts. *See* ECF No. 15 at 8–9. Mr. Priest brings his constitutional claims

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 5

through 42 U.S.C. § 1983. Defendants have moved for summary judgment and assert qualified immunity. ECF No. 61.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A key purpose of summary judgment is to "isolate and dispose of factually unsupported claims . . . . *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is not a disfavored procedural shortcut, but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring a jury or judge to resolve the parties' differing versions of the truth at trial. *T.W. Elec. Service, Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

The moving party may also meet its burden by "pointing out to the district court [that there is] an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 447 U.S. at 325. "If the nonmoving party cannot muster sufficient evidence" to establish the essential elements of its claim in response to the motion for summary judgment, then "a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 331.

At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). Furthermore, the court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

## DISCUSSION

### I. Constitutional Claims under 42 U.S.C. § 1983

Mr. Priest brings his various constitutional claims through 42 U.S.C. § 1983. "Traditionally, the requirements for relief under [§] 1983 have been articulated as (1) a violation of rights protected by the Constitution or created by a federal statute, (2) proximately caused (3) by the conduct of a 'person' (4) acting under

color of state law." *Crumpton v. Gates*, 947, F.2d 1418, 1420 (9th Cir. 1991). Each of Mr. Priest's constitutional claims is based on the taking of his eagle feathers. Rather than focusing on the prongs of the alleged constitutional violations, the parties' briefing in this matter focused on causation issues under Section 1983. Specifically, the parties' arguments address whether Defendants caused Mr. Priest's eagle feathers to be taken from him, resulting in the alleged constitutional violations. The Court addresses these causation issues related to Mr. Priest's Section 1983 claims now.

**A. Integral Participant Standard**

A defendant only is liable under Section 1983 if he or she personally participated in the violation of the plaintiff's constitutional or federal rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Ninth Circuit has explained that, when multiple officers act to cause the alleged harm, each officer's "liability under section 1983 is predicated on his 'integral participation in the alleged violation.'" *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)); *see also Nicholson v. City of L.A.*, 935 F.3d 685, 691–92 (9th Cir. 2019) ("A police officer need not have been the sole party responsible for a constitutional violation before liability may attach."). "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Blankenhorn*, 485 F.3d at 481 n.12 (quoting *Boyd v. Benton Cnty.*, 374 F.3d 773,

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 8

780 (9th Cir. 2004)). However, "it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id*.

In *Jones v. Williams*, the Ninth Circuit further explained causation issues that arise in Section 1983 cases when there is no direct evidence of each individual defendant's participation in the alleged constitutional violations. 297 F.3d 930 (9th Cir. 2002). In that case, Plaintiff Jones argued that the defendant police officers violated the Fourth Amendment by conducting an unreasonable search of her home. The officers admitted that, during the search, they "moved furniture, opened doors and drawers, moved pictures, broke a lock on a closet door, moved clothes and auto parts around . . . and broke drawers off of a dresser." *Id*. at 933. There also was a urine smell in Ms. Jones's iron after the search of her home, indicating that one of the officers had urinated in her iron. *Id*. at 933–34. However, all of the officers denied urinating in the iron. *Id*. at 394. Additionally, the officers denied responsibility for the condition of the living room. *Id*.

At trial, Ms. Jones proposed a jury instruction on group liability, but the trial court rejected it. *Id*. 933–34. Ms. Jones argued that she needed the instruction because "the officers escorted all of the residents out of the house before they began to search, and, therefore, there were no witnesses to contradict the denials of the officers" with respect to the iron and the living room's condition. Ms. Jones's proposed jury instruction was:

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 9

> When a plaintiff cannot specifically state which defendant police officers engaged in an unreasonable search of a plaintiff's residence, but there is evidence to specify that certain defendants were among the police officers who were inside plaintiff's residence, and the officers agree they are among the officers who were present, the jury can reasonably infer that the named officers were participants in the alleged unlawful conduct.

*Id*. at 935.

The Ninth Circuit upheld the trial court's decision to reject the proposed instruction, finding that it would have allowed the jury to make impermissible inferences regarding liability based on the officers' mere presence at the scene of the search. *Id*. at 938 (explaining that the proposed instruction "would have afforded an impermissible basis for liability" rather than "a permissible inference").

This case presents similar issues. Like Ms. Jones, Mr. Priest was removed from the scene of the alleged constitutional violation prior to its occurrence. *See* ECF No. 67-1 at 75 (explaining that Mr. Priest was not present when property was removed from his cell). However, as Mr. Priest is the plaintiff, he must produce some direct or circumstantial evidence showing that the named Defendants personally participated in taking his eagle feathers. He cannot rest on speculation or on the allegations in his Complaint at the summary judgment phase. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

Regarding Defendants Holbrook, Jackson, Alvarado-Jackson, and Brewer, Mr. Priest admits that he has no evidence or information showing that they personally participated in taking his eagle feathers. ECF No. 67-1 at 40–41.

However, with respect to Defendants Duncan and Doe, Mr. Priest argues that the evidence shows that they took his eagle feathers, thus violating various constitutional rights. *See id*. at 41. In his deposition, Mr. Priest states that Defendants Duncan and Doe packed out his cell, even though Mr. Priest was not present and has no witness testimony or other evidence to corroborate this statement. *Id*. During his deposition, Mr. Priest stated that he remembers Defendants Duncan and Doe working with Lieutenant Brewer, during the third shift, on August 9, 2015. *See* ECF No. 67-1 at 69. From this fact, combined with the fact that Defendants Duncan and Doe inventoried Mr. Priest's property, Mr. Priest seems to infer that Defendants Duncan and Doe packed out his cell and took his eagle feathers. *See* ECF No. 15 at 7.

It is disputed whether Defendants Duncan and Doe worked the third shift, the shift during which Mr. Priest's belongings were taken from his cell. *See* ECF No. 56 at 3–4. Neither Defendants nor Plaintiff have submitted time sheets indicating which COs worked the third shift on August 9, 2015. Defendants Duncan and Doe have submitted declarations in this matter, stating that they did not work the third shift that day, and that they were not present when Mr. Priest's property was collected. ECF Nos. 57 at 2 and 71 at 2. They explain that they

worked the following shift, the first shift, and inventoried Mr. Priest's belongings at that time. *Id.* They claim that Mr. Priest's cell already had been cleared out by different COs. *See id.*; *see also* ECF No. 56 at 3–4.

Because this is a motion for summary judgment, the Court must view all facts in the light most favorable to the non-moving party. Mr. Priest stated in his deposition that he remembers Defendants Duncan and Doe working the shift during which he was transferred to segregation, under the supervision of Lieutenant Brewer. That was the third shift. Therefore, viewing the facts in the light most favorable to Mr. Priest, Defendants Duncan and Doe were working the third shift on August 9, 2015, the shift during which Mr. Priest's belongings were removed from his cell.

However, as the Ninth Circuit explained in *Jones*, mere presence at the scene of a constitutional violation is not enough to show personal, integral participation in the alleged violation. As Lieutenant Brewer explained, when he worked the third shift in Mr. Priest's former unit, he generally would supervise six or seven COs. *Id.* at 2. Even if the Court assumes that Defendants Duncan and Doe were working the third shift on August 9, 2015, it cannot jump to the conclusion that they were the COs who packed out Mr. Priest's cell that night, or that they took Mr. Priest's eagle feathers, without more facts presented. While the Court must draw reasonable inferences in the Plaintiff's favor on a motion for summary judgment, *T.W. Elec. Service, Inc.*, 809 F.2d at 631, it cannot draw the

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 12

impermissible inference that Defendants Duncan and Doe caused or integrally participated in the alleged unlawful activity because they were present during the third shift on August 9, 2015. *See Jones*, 297 F.3d at 937–38 ("[A]llowing the jury to find individual officers liable when there is no evidence to link them to specific actions would have been erroneous as a matter of law.").

One could argue that because Defendants Duncan and Doe filled out Mr. Priest's property inventory form, it can be inferred that they were integral participants in the constitutional violation. However, it is undisputed that the inventory form was filled out the day after Mr. Priest was taken to segregation and his property was removed from his cell, August 10, 2015. It is not reasonable to infer that Defendants Duncan and Doe took Mr. Priest's feathers from the fact that they recorded Mr. Priest's property the following day, without additional evidence.

Mr. Priest has not submitted evidence demonstrating that any of the Defendants participated in taking his eagle feathers, the act which forms the basis of each of his constitutional claims. Therefore, no reasonable juror could conclude that the Defendants were integral participants in the alleged constitutional violations.

**B. *Res Ipsa Loquitor***

With respect to his Section 1983 claims, Mr. Priest argues that causation may be established through the doctrine of res ipsa loquitor, and therefore summary judgment is inappropriate. He states that "where a group of defendants

are the only ones capable of the alleged constitutional harm, those defendants are inferred to be responsible under the doctrine of res ipsa loquitor." ECF No. 65 at 4–5 (citing *Johnson v. United States*, 333 U.S. 46, 48 (1948)). Mr. Priest cites to the concurrence in *Jones* for the proposition that "a *res-ipsa* type instruction can be given in a case [alleging a § 1983 violation] . . . ." *Id*. at 5 (quoting *Jones*, 297 F.3d at 939 (Silverman, J., concurring)). In the *Jones* concurrence, Judge Silverman wrote that a res-ipsa type instruction is appropriate in a Section 1983 case only when: (1) "the defendants are uniquely positioned, to the exclusion of others, to know the circumstances that caused the plaintiff's injury"; and (2) "the injury would not normally occur without wrong-doing on the defendants' part." *Id*. While Judge Silverman maintained that res ipsa loquitor applies to Section 1983 claims, he agreed with the outcome of the decision because the facts of the *Jones* case did not support a res ipsa loquitor instruction. *Jones*, 297 F.3d at 939. "Specifically, the evidence at trial was not susceptible of the interpretation that the damage occurred while no one but the officers was present." *Id*.

Even if it is appropriate to apply res ipsa loquitor to Section 1983 claims, uncontroverted facts on the record show that the named Defendants in this matter were not the only people who had access to Mr. Priest's cell or to his eagle feathers. *See* ECF No. 67-1 at 75. As in *Jones*, the record here is "not susceptible of the interpretation that the damage occurred while no one but the [Defendants] was present." *Jones*, 297 F.3d at 939. In other words, even if res ipsa loquitor

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 14

applies to Section 1983 claims generally, it does not apply in this matter based on the facts presented. Therefore, Plaintiff cannot use res ipsa loquitor to establish causation with respect to his Section 1983 claims.

**C. Supervisory Liability**

Mr. Priest also has alleged that Defendants Holbrook, Jackson, Alvarado-Jackson, and Brewer are responsible for the alleged constitutional violations via supervisory liability. He argues that their actions, taken in their roles as supervisors, caused the loss and/or destruction of his eagle feathers, resulting in the alleged constitutional violations.

In a Section 1983 action, "[t]here is no respondeat superior or vicarious liability." *Hunt v. Davis*, 749 Fed. Appx. 522, 524 (9th Cir. 2018); *see Taylor*, 880 F.2d at 1045 (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir. 1984); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (a supervisor can only be held liable for his or her own culpable action or inaction). Although a supervisor's acquiescence to a constitutional violation can result in her liability, still there must "be a 'sufficient causal connection' between the supervisor's own conduct and the violation." *Hunt*, 749 Fed. Appx. at 524 (quoting *Starr*, 652 F.3d at 1207). To establish a causal connection between the supervisor's conduct and the violation, the plaintiff must show either: (1) the supervisor set in motion the actions that caused the constitutional injury; or (2) the

supervisor knowingly refused to stop the actions of others and knew or had reason to know that those actions would inflict a constitutional injury. *Id*.

Mr. Priest has not provided evidence to support his allegations against the supervisor Defendants. No evidence on the record shows that any of the supervisory defendants had knowledge of Mr. Priest's eagle feathers. No evidence on the record would allow a reasonable juror to conclude that any of the supervisors knew or should have known of a constitutional violation, or took actions to set a constitutional violation in motion. *See Hunt*, 749, Fed. Appx. at 524. Additionally, Mr. Priest acknowledged in his deposition that he has no information showing that Defendants have taken or destroyed any other inmates' religious property. ECF No. 67-1 at 44. While Mr. Priest makes supportive allegations in his Complaint and in his pleadings, he does not present facts to support his argument regarding supervisory liability. Specifically, he does not present facts demonstrating a causal connection between the taking of his eagle feathers and any action or inaction taken by the supervisor Defendants.

Mr. Priest has not provided evidence demonstrating that Defendants Holbrook, Jackson, Alvarado-Jackson, or Brewer caused the alleged constitutional violations through the theory of supervisory liability. Additionally, as the Court already has explained, Mr. Priest has not presented evidence from which a reasonable juror could conclude that Defendants were integral participants in the alleged constitutional violations, nor can he rely on res ipsa loquitor to establish

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 16

causation here. As Mr. Priest has not presented evidence to establish an essential element of his Section 1983 claims, causation Therefore, Mr. Priest's Section 1983 claims, through which he brought his constitutional claims, must be dismissed with prejudice. *See Celotex Corp.*, 477 U.S. at 331.

## II. RLUIPA & RFRA

In addition to his constitutional claims, pursued through Section 1983, Mr. Priest has brought a claim under RLUIPA. RLUIPA provides that "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the government establishes that the burden furthers a 'compelling governmental interest,' and does so by 'the least restrictive means.'" *Greene v. Solano Cty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting 42 U.S.C. § 2000cc-1(a)(1)–(2)). In a RLUIPA claim, the plaintiff "bears the burden of establishing that a prison policy constitutes a substantial burden on [his or her] exercise of religion." *Sprouse v. Ryan*, 346 F. Supp. 3d 1347, 1355 (D. Ariz. 2017). If the plaintiff makes a prima facie showing that the challenged policy imposes a substantial burden on religious exercise, then the burden shifts to the government to show that the policy furthers a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-2(b); *Greene*, 513 F.3d at 986.

Mr. Priest has not provided evidence of any law, policy, or practice prohibiting him from practicing his religion. He bases his RLUIPA claim on the fact that his eagle feathers were taken. *See* ECF No. 65 at 8. However, no evidence on the record supports the argument that Mr. Priest's feathers were taken pursuant to any prison policy or practice. Therefore, Mr. Priest's claim under RLUIPA fails as a matter of law.

Mr. Priest also has brought a claim under RFRA. However, RFRA is not applicable to state or local law. *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997); *Guam v. Guerrero*, 290 F.2d 1210, 1219 (9th Cir. 2002) (citing *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000) ("We have held, along with most other courts, that the Supreme Court invalidated RFRA only as applied to state and local law.")). Mr. Priest has asserted claims against state actors, and he has not indicated that any federal law or policy has infringed on his religious practices. Thus, Mr. Priest's RFRA claim fails as a matter of law.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Amended Motion for Summary Judgment, **ECF No. 61**, is **GRANTED**.

**2.** Plaintiff's claims are **dismissed with prejudice.**

3. Judgment shall be entered for all Defendants.

ORDER GRANTING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT ~ 18

4. Any remaining, pending motions in this matter are **DENIED AS MOOT**, and any hearing dates are hereby **STRICKEN**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** February 13, 2020.

> *s/ Rosanna Malouf Peterson*
> ROSANNA MALOUF PETERSON
> United States District Judge